UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CLAIRE ANN WILLIAMS | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 12 C 6280 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Daniel G. Martin |
| UNITES STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 23, 2011, Plaintiff Claire Ann Williams filed suit against Defendant, the United States Postal Service ("USPS"). Therein, Williams alleged that she was injured in Chicago, Illinois as a result of a motor vehicle collision caused by the negligence of United States Postal Service employee, Ramiro Garza, acting within the scope of his employment. (Compl. ¶¶ 2, 7-8, 13-18.). All discovery closed on August 5, 2013. A bench trial commenced on September 29, 2014, concluding on that same date.

The bench trial included the testimony of several witnesses and the admission of various exhibits into evidence. The parties also presented oral opening statements and oral closing arguments. Both sides submitted proposed findings of fact[1] and conclusions of law,

---

[1] To the extent a proposed finding of fact relied on information not in evidence at trial, it was disregarded.

1

which were made part of the final pretrial order.

The Court has considered the evidence, including the testimony of the witnesses and exhibits, and has further considered the oral arguments and previous written submissions of counsel for the parties and the authority cited therein.

The Court weighed the testimony of each witness and determined whether the testimony was truthful and accurate (in part, in whole, or not at all) and decided what weight, if any, to give to the testimony of each witness. In making this determination, the Court considered, among other things: the ability and opportunity of the witness to see, hear, or know information about which the witness testified; the witness's memory; any interest, bias, or prejudice the witness may have; the witness's intelligence; the manner of the witness while testifying; and the reasonableness of the witness's testimony in light of all of the evidence in the case. *See* Fed. Civ. Jury Instr. 7th Cir. § 1.13 (2009).

Pursuant to Fed. R. Civ. P. 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact.

The Findings of Fact section of this Opinion and Order, for purposes of organization and clarity, contains some reference to law and facts. To the extent, if any, that any part of

that section may be considered Findings of Fact or Conclusions of Law, it shall be so deemed.

## LEGAL STANDARD

The case involved a relatively straightforward dispute over an automobile accident. The Plaintiff, Claire Ann Williams (hereafter, "Plaintiff") sued Defendant United States of America (hereafter, "Defendant"). Plaintiff brought a cause of action for damages for personal injuries sustained by the Plaintiff as a result of a motor vehicle collision allegedly caused by the negligence of USPS employee, Ramiro Garza. The Defendant denied all negligence.

### *Jurisdiction*

The Court has subject-matter jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). Cases brought under this Act may only be brought in federal court. The substantive law of the state in which the alleged tort occurred, Illinois, is applicable. *See Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001) (citing 28 U.S.C. § 1346(b)); 28 U.S.C. § 2674. The substantive law of the state in which the alleged tort occurred applies in a suit brought under the Federal Tort Claims Act. *Id.*

### *Applicable Illinois Law*

In this case, the applicable substantive law is that of the State of Illinois. Procedural law is governed by federal law. *Gil v. Reed,* 535 F.3d 551, 558 n.2 (7th Cir. 2008). The burden of proving each element rests with the plaintiff. *Rittenhouse v. Tabor Grain Co.,* 561

N.E.2d 264, 269 (Ill. App. 1990).

Indeed, Plaintiff bears the burden of proving that Defendant's negligence was more probably than not the cause of her injuries. *Newell v. Corres,* 466 N.E.2d 1085 (Ill. App. 1984). As defined in Illinois Pattern Jury Instruction 15.01, proximate cause is "that cause that, in the natural or ordinary course of events, produced the injury complained of."

Absent such proof, Plaintiff is not entitled to any recovery for negligence in the action. Indeed, the negligence theory of recovery is controverted in this action. The mere existence of a collision resulting in injuries does not, as a matter of law, mean that the driver of the vehicle is negligent or failed to exercise due care. *Wilson v. CTA,* 455 N.E.2d 195, 199 (Ill. App. 1983). In Illinois, negligence, as a theory of recovery, consists of four separate elements: (1) duty, (2) breach, (3) causation, and (4) damage. *Lilipetto v. Village of Wilmette,* 82 N.E.2d 358, 360 (Ill. App.1985).

Stated alternatively, "[t]o establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed [her] a duty, that the defendant breached this duty, and that [she] suffered an injury that was proximately caused by the defendant's breach. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009), citing *Cunis v. Brennan*, 56 Ill.2d 372, 308 N.E.2d 617, 618 (1974).

To prevail on a claim that the United States' negligence was more probably than not the cause of her injuries, the Plaintiff must demonstrate here that the United States Postal Service's actions were the proximate cause or "that cause which in the natural or probable

sequence produced the injury complained of."

## STIPULATIONS AND TESTIMONIAL FACTS

The parties stipulated to the date, time, and location of the accident. The Defendant also stipulated to the medical treatment including all Rule 26 disclosed medical records and bills received by the Plaintiff, and the amount of the medical expenses incurred by the Plaintiff. The only dispute in the trial was whether the Defendant was negligent in causing the accident and, if so, the amount of damages to be awarded.

Both sides agreed that on September 24, 2009, Plaintiff was in a motor vehicle accident in Chicago, Illinois. Plaintiff was proceeding west on Roosevelt Road, west of Clark Street at the time of the accident. Roosevelt Road is an east-west street in Chicago, Illinois. Plaintiff and Defendant USPS driver were both westbound on Roosevelt Road west of Clark Street. At the point of Plaintiff's accident, Roosevelt Road is an overpass, going over railroad tracks. Plaintiff's vehicle thereafter rolled over or became airborne. Plaintiff's vehicle came to a rest on its roof after hitting a light pole on the north side of Roosevelt Road. Plaintiff suffered injuries and incurred medical bills.

### *Plaintiff Williams*

Plaintiff Clare Ann Williams testified as follows: On September 24, 2009, she was working for the State of Illinois, and was on her way to state court at about 9:30 in the morning. Part of her route included traveling westbound on Roosevelt Road to her final destination, the Juvenile Justice Division of the Cook County Circuit Court near Ogden

5

Avenue in Chicago.

As Plaintiff was heading westbound on the north side of Roosevelt Road, she planned to stop at the Whole Foods store which was located on that north side of Roosevelt shortly before Canal Street. She planned to purchase some coffee at the store. Plaintiff had just passed Clark Street. She was in the left lane of two moving lanes of westbound traffic.

Plaintiff then attempted to merge to the right lane to gain access into the Whole Foods parking lot. At that time, Plaintiff claimed Defendant's U.S. Postal Service truck (described as a "Mac" truck) struck her car from behind. The impact caused Plaintiff's vehicle to lose control, hit a pole, turn upside down, and cause the injuries alleged within the complaint and documented within the medical reports.

Plaintiff further testified that she had seen the postal truck for some time prior to the impact – a block or more in advance. She saw the postal truck speeding, and she saw it behind her the whole time after turning onto Roosevelt Road.

Plaintiff claimed that at the moment of impact, as she was in the process of changing lanes from the left lane to the right lane, she was probably about half in the right lane and half in the left lane. At the same time Plaintiff changed lanes, Defendant changed lanes. At that moment, she felt the impact and looked back into her rearview mirror. She observed the same postal truck, attempting to turn right into the right lane at the same time as she.

*Defendant Garza*

For its part, the United States maintained it was not responsible for Plaintiff's

6

accident. Defendant Ramiro Garza testified that, just before her accident, Plaintiff attempted to pass him on the left without leaving enough distance to move back into the right lane safely. She then had to cut him off in order to make a right turn into the Whole Foods parking lot. Plaintiff lost control of her vehicle directly in front of Defendant.

Defendant had worked as a USPS driver for many years. During that time period, he had undertaken countless "road tests" in vehicles for the USPS. Defendant was headed toward USPS facility at 740 South Canal Street in Chicago as he proceeded westbound on Roosevelt Road that morning. He was test-driving the USPS vehicle at the time. Defendant drove that same route every working day.

Indeed, as Plaintiff began to move back into the right lane after passing Defendant, Defendant stated that took his foot off the gas, avoiding contact. He had been traveling at a speed of between 30 and 35 miles per hour. At that point Ms. Williams collided with the curb, her car flipped over, and slammed into a light pole. Defendant unequivocally denied that an impact ever occurred. He urged that he did not hit Plaintiff's vehicle or notice anything else hitting her vehicle.

The parties agreed that Plaintiff was the lead car waiting at a red light with Defendant immediately behind her. Both were waiting to turn left at the time that the light turned green. Defendant testified that Plaintiff turned left first and immediately maneuvered into the right lane on Roosevelt.

The Whole Foods parking lot was less than half a mile ahead from that

intersection on the right side of Roosevelt Road. Defendant stayed in the left lane after completing the turn onto Roosevelt and proceeded to pass Plaintiff because she was driving well under the speed limit in the right lane.[2] The view heading westbound on Roosevelt demonstrates two-lanes of traffic in each direction. Defendant testified that he turned into the left lane while he observed Plaintiff after completing her left turn go into the right lane.

Defendant claimed that, after quickly checking his mirrors after passing Plaintiff, he made sure that he was safely past her and then proceeded to merge into the right lane in front of Plaintiff so that he could then turn right onto Canal Street to return to the vehicle maintenance facility from which he departed. Canal was the next North-South cross street at Roosevelt Road. Plaintiff, however, responded by attempting to "leapfrog" in front of him, and to do this she moved into the left lane and accelerated past his trailer. Plaintiff immediately began to move very quickly back into the right lane in direct proximity to the Whole Foods parking lot.

Defendant stated that Plaintiff had accelerated past his trailer and was moving quickly back into the right lane when she lost control of her car. Plaintiff's vehicle lost control and then hit a pole. Defendant's was the only vehicle at or near the Plaintiff's vehicle at the time of the impact.

At the point that Plaintiff's car came to a rest, the Whole Foods parking lot entrance was approximately 200 feet away. After the accident occurred, Defendant called the postal

---

[2]Plaintiff also testified that she was driving 10 miles under the speed limit at the time.

service and told them that there had been an accident. He spoke briefly with the police about his observation of the accident. Additional relevant testimonial evidence and findings of fact will be discussed below.

**FINDINGS OF FACT**

This Court finds that Plaintiff has failed to sustain her burden of proof and hereby finds in favor of Defendant. Plaintiff and Defendant squarely contradict each other. While there were some minor inconsistencies in both of their testimonies, neither witness was so inconsistent or incredible as to render his or her testimony facially unworthy of consideration.[3] Accordingly, the party bearing the burden of proof has failed to meet it here.

Logically, Plaintiff was a half block from Whole Foods and was intent upon stopping there to purchase coffee. It may be reasonable to conclude that she simply did not have enough time to get over from the left lane and back into the right lane when the parking lot of that establishment was between 200-400 feet away. Yet such conclusions, however reasonable, are not the fatal flaw in the Plaintiff's case.

Equally logical and reasonable was Plaintiff's testimony that Defendant impacted her vehicle as both Plaintiff and Defendant were simultaneously changing lanes. It may be reasonable to conclude that both sets of testimony have validity. It may even be

---

[3]Defendant testified that he observed Plaintiff having a cell phone conversation as she drove. Plaintiff denied speaking on her phone at that time. Defendant introduced T-Mobile telephone records which demonstrated that Plaintiff received an incoming call of one minute or less in duration from Ice Mountain Water Company at 9:24 AM on the day of the accident. Yet that telephone call is of no import. A 1-800 incoming call one minute or less in duration could certainly have gone directly to an answering system. Williams says she was not talking on her cell phone. Garza says it appeared as though she was. Their testimonies constitute a "wash."

reasonable to conclude that the testimonies constitute a virtual tie. In baseball, a tie goes to the runner. And here, the runner is the Defendant.

This Court makes no specific finding as to whether Plaintiff's or Defendant's version of conflicting events carries more weight. This Court therefore must turn to the additional evidence set forth to find whether the scale swings back in Plaintiff's favor. After careful analysis, the Court concludes that it does not:

### *Officer Eugene Goldsmith*

Officer Goldsmith was not an occurrence witness. He was a Chicago Police Officer who responded to the scene of the accident. He later conducted an investigation, analyzed the evidence, and concluded that Defendant did not strike Plaintiff with his vehicle. His investigation included interviews with parties and witnesses to the accident, review of the "OEC" (Office of Emergency Communications) camera tapes, examination of respective vehicles, and extent of injuries. That conclusion is deserving of some weight.

Goldsmith's entire deposition testimony was set forth and made part of the record by agreement of both parties. Officer Goldsmith concluded that Plaintiff was at fault in causing the accident. Goldsmith conducted his examination directly after the accident. Goldsmith had been a Chicago police officer for 19 years. During that time period, he had conducted numerous traffic investigations and on-the-job training sessions involving accident investigations. He filled out part of the motorist report in the instant case.

Officer Goldsmith's opinion was heavily buttressed by the fact that there was no

physical evidence of a collision between the vehicles. Other than a small, almost indiscernible yellow paint-scratch on the rear bumper, Plaintiff could point to no physical evidence which might have assisted her in meeting her burden. The yellow scratch could very well have predated the accident. Indeed, the lack of physical evidence cut against Plaintiff. The physical condition of the vehicles at the alleged point of collision, and the photographic verification of that location, failed to support Plaintiff's testimony that she was struck from behind by a large Mac truck traveling at 35 miles per hour. That is that.

### *Carol Siebert*

Finally, although Ms. Siebert led off for the Plaintiff, she was the least consequential witness of the day. While entirely credible, Ms. Siebert never saw the accident. She only saw the aftermath. And those observations were not inconsistent with Plaintiff's or Defendant's version.

Ms. Siebert testified that the accident happened over the railroad tracks. The first time Ms. Siebert knew anything about an accident is when she saw Plaintiff's car sliding down Roosevelt Road toward a light pole. She did not see the collision. She did not see any contact between the vehicles. She could not even be sure that the sound she heard was the sound of an impact. Ms. Siebert simply said there was "screeching," and that she had no idea what that sound was. Without more, Ms. Siebert's observations could shed no additional light upon the case.

Accordingly, Plaintiff failed to prove at trial that the injury resulting from her

accident was attributable to Defendant. While that accident was certainly unfortunate, Plaintiff could not demonstrate that it was caused by negligence on the part of Defendant. The United States is not liable for Plaintiff's injury.

## **LEGAL CONCLUSION**

As explained above, Plaintiff failed to meet her burden of proof that the Defendant was liable for her collision and resulting injuries. The burden of proving each and every element rested throughout the trial with Plaintiff. While Plaintiff may have proven at trial was that she was injured, she failed to demonstrate that Defendant breached any duty, or that she suffered an injury that was proximately caused by Defendant's breach. Accordingly, her claim must fail.

Defendant did not breach any duty owed to Plaintiff. Nor were any of its actions the proximate cause of Plaintiff's injuries. Judgment is entered in favor of the United States.

*Daniel G. Martin*

_____
DANIEL G. MARTIN
UNITED STATES MAGISTRATE JUDGE

DATE: April 09, 2015.